UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LANELLE SWANSON, on behalf of herself  *
and all others similarly situated,      *
                                        *
        Plaintiff,                      *
                                        *
v.                                      *   Civil Action No. 12-10151-JLT
                                        *
LORD & TAYLOR, LLC.                     *
                                        *
        Defendant.                      *

MEMORANDUM AND ORDER

August 28, 2012

I.  Introduction

Plaintiff Lanelle Swanson ("Swanson") brings suit against her former employer, Defendant, Lord & Taylor, LLC ("Lord & Taylor"), on behalf of herself and a proposed class of Lord & Taylor employees, alleging violations of Massachusetts' wage and hour laws.[1] Plaintiff originally brought this action in state court and now moves for remand due to lack of federal jurisdiction.[2]

II. Background

    A.  Factual Background

Plaintiff worked as a sales associate at Defendant Lord & Taylor's Boston retail location.[3] In her complaint, Swanson alleges that the policies and practices of Defendant Lord & Taylor

---

[1] Compl. [#1-3] ¶ 2; Notice of Removal [#1], Ex. D (Hoover Decl.) ¶ 4.

[2] Compl. ¶ 1.

[3] Compl. ¶2.

1

prevent its sales associates from being compensated for all the hours they work.[4] Lord & Taylor uses a payroll system that requires employees to swipe their identification card when they arrive at and leave from work and when they leave for and return from a meal break.[5] Plaintiff alleges that, frequently, sales associates do not take a meal break at all or do not take a full hour for their meal break.[6] Lord & Taylor, however, automatically deducts a one hour meal break from sales associates' pay if they do not swipe their card both when they leave for and when they return from a meal break.[7]

Plaintiff also alleges that it is the "typical practice" for sales associates to arrive several minutes early and leave several minutes late.[8] Associates are required to swipe in when they arrive at work, and to swipe out when they leave.[9] Lord & Taylor adjusts associates' start and end times by changing the time an associate swipes his or her card to that employee's scheduled start or end time if it is within six minutes of the scheduled start or end time.[10] For example, if an employee swiped her card at 8:55 am but was not scheduled to start work until 9:00 am, the system would record that she started work at 9:00 am, not 8:55 am.[11]

---

[4] Compl. ¶ 6; Notice of Removal ¶ 16.

[5] Compl. ¶ 7.

[6] Compl. ¶ 10.

[7] Compl. ¶ 9.

[8] Compl. ¶ 12.

[9] Compl. ¶ 7.

[10] Compl. ¶ 12.

[11] Mot. to Remand, 1-2 [#4].

Plaintiff sues on behalf of herself and all others similarly situated for violation of Massachusetts wage and hour laws.[12]

B. Procedural Background

Swanson filed a Complaint [#1-3] in Middlesex Superior Court on December 21, 2011.[13] Lord & Taylor filed a Notice of Removal [#1] on January, 25, 2012. Swanson filed a Motion to Remand [#4] on February 24, 2012. Lord & Taylor filed an Opposition [#9] to Swanson's Motion to Remand on March 19, 2012. Swanson filed a Reply [#11] on April 3, 2012. The court held a hearing on the Motion to Remand on July 18, 2012, and took the matter under advisement. For the reasons set forth below, the Motion to Remand is ALLOWED.

III. Discussion

A. Legal Standard

The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over state law class action lawsuits when: "(1) there is 'minimal' diversity (meaning that at least one plaintiff and one defendant are from different states; (2) the amount in controversy exceeds $5 million; and (3) the action involves at least 100 class members."[14] A removing Defendant has the burden, under

---

[12] Compl. ¶¶ 3, 14.

[13] It should be noted that this is a related action to Swanson v. Lord & Taylor LLC, 1:11-cv-10412-JLT ("Swanson I"). In that matter, this court denied Plaintiff's Motion for Class Certification, in part based on Plaintiff's failure to satisfy the exhaustion requirement of M.G.L. c. 149 §§ 148 and 150. 1:11-cv-10412-JLT [#33], at 7. Since that time, Plaintiff fulfilled the exhaustion requirement and re-filed the present action, based on substantially the same claims, in Middlesex Superior Court. Compl. [#1-3].

[14] Manson v. GMAC Mortgage, LLC, 602 F. Supp. 2d 289, 293 (D. Mass. 2009) (quoting CAFA at 28 U.S.C. §§ 1332(d)(2) and (5)(b)).

CAFA, of seeing that each of the jurisdictional requirements are met.[15]  The parties in the present action do not contest either the diversity or the minimal number of class members requirement.

Where the amount in controversy requirement is contested, removing defendants are required to demonstrate "a 'reasonable probability' that the aggregate claims of the plaintiff class were greater than $5 million at the time of removal."[16]  The reasonable probability standard is particularly useful where the complaint does not contain any specific damages allegations.[17]

Where the jurisdictional amount is not facially apparent from the complaint, the court should "look to the notice of removal and any other materials submitted by the defendant."[18]  Whether the defendant has met its burden of showing the amount in controversy to a 'reasonable probability' may ultimately turn on an analysis of both parties submissions.[19]  It is proper for courts to consider which party has access to the relevant information when determining whether the amount in controversy requirement has been satisfied.[20]  The court's analysis must focus on whether the amount in controversy requirement was met at the time of removal, and "any doubts in the evidence should be construed in favor of remand because the court has a 'responsibility to police the border

---

[15] Manson, 602 F. Supp. 2d at 293 (citing Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48-49 (1st Cir. 2009)).

[16] Manson, 602 F. Supp. 2d at 293.

[17] Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 286 (D. Mass. 2011) (Tauro, J.).

[18] Id. (quoting Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220 (D.N.H. 2004)).

[19] Reynolds, 272 F.R.D. at 286 (quoting Amoche, 556 F.3d at 43).

[20] Reynolds, 272 F.R.D. at 286 (quoting Amoche, 556 F.3d at 51).

of federal jurisdiction.'"[21] The amount in controversy inquiry is preliminary, and "'should be done quickly without . . . extensive fact finding . . . .'"[22] The inquiry is divorced from Plaintiff's likelihood of success on the merits because that has no bearing on what the amount in controversy is during the pendency of the case.[23]

In the notice of removal, Defendant multiplied Plaintiff's hourly wage rate by the total number of meal breaks at issue for each potential member of the proposed class. Defendant States: "[w]ith five allegedly missed meal breaks per week at a rate of $11.65 per hour, for 168 full-time sales associates for the period from December 21, 2008 (three years preceding the filing of the Complaint) to the present (160 weeks), the estimated amount in controversy for missed meal breaks for full-time sales associates is approximately $1,565,760."[24] For part-time sales associates, Defendant multiplied Plaintiff's pay rate by the number of part-time sales associates, with a rate of one missed meal break per week for 160 weeks, and concluded that the amount in controversy is approximately $740,000.

Defendant uses similar calculations to determine the amount in controversy for the rounding claim. Based on the Complaint's assertion that "associates typically arrive 'several minutes early' and leave 'several minutes late' each day."[25] Defendant assumed each associate swiped in five

---

[21] Reynolds, 272 F.R.D. at 286 (quoting Mut. Real Estate Holdings, LLC v. Houston Cas. Co., No. 10-cv-236-LM, 2010 WL 3608043, at *3 (D.N.H. Sept. 13, 2010)).

[22] Reynolds, 272 F.R.D. at 286 (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).

[23] Reynolds, 272 F.R.D. at 286 (quoting Amoche, 556 F.3d at 51).

[24] Notice of Removal, 4-5.

[25] Id. (quoting Compl. ¶ 12).

minutes early and swiped out five minutes late, for a total of 50 minutes per week of allegedly unpaid work. This leads to a total of $250,522 in controversy for full time associates. Based on these calculations, the total amount in controversy for all of the claims would be $2,556,282.00. This amount would be trebled pursuant to Mass. Gen. Laws ch. 149 § 150, resulting in an amount in controversy of approximately $7,668,846.[26]

Plaintiff challenges Defendant's calculations as speculative and unsupported by the evidence. Plaintiff alleges that Defendant's use of a 100% violation rate (assuming all full time employees missed their meal break every day, and were uncompensated for 10 minutes per day due to rounding), is out of alignment with the evidence. Specifically, Plaintiff relies on affidavits submitted by Defendant in opposition to the Motion to Certify Class in Swanson I as evidence of the actual violation rate. Plaintiff takes the position that Defendant has access to its own wage and hour data, and so should be able to determine the actual violation rate.

Cases that have allowed motions to remand have largely focused on whether the defendant provided a method of calculation of the amount in controversy in the notice of removal.[27] Here, the parties agree that the potential class included 565 workers who worked during a 156 week

---

[26] Notice of Removal ¶ 23.

[27] See e.g., Gomes v. Midland Funding, LLC, 839 F. Supp. 2d 417, 420 (D. Mass. 2012) (finding that the amount in controversy requirement wasn't met where the defendant provided no "specific or affirmative evidence as to how the amount in controversy was calculated."); see also Reynolds 272 F.R.D. at 287 (finding that the defendant had not met the burden for showing removal was appropriate under CAFA in a wage and hour class action where it omitted any calculation of the amount in controversy that the plaintiff could have rebutted.); see also Amoche, 556 F.3d at 52 (finding that the defendant had not met its burden where it could have, but did not, provide information that would have given a more definite estimate of the class size, and therefore, the amount in controversy).

6

period. The main points of disagreement between the parties are which violation[28] and wage[29] rates to use in the damages calculations. The key question, therefore, is whether Defendant's assumption of a 100% violation rate is a reasonable method for calculating the amount in controversy. In Muniz v. Pilot Travel Centers, LLC, the District Court for the Eastern District of California found the defendant's use of a 100% violation rate in calculating the amount in controversy to be reasonable where the plaintiff alleged "no facts specific to the circumstances of her or the class members' allegedly missed meal and/or rest periods."[30] The court in that case also found that the defendant was not obliged "to support removal with production of extensive business records to prove or disprove liability and/or damages," at the removal stage of the litigation.[31] The District Court for the Southern District of California also denied a motion to remand where removal had relied on similar calculations.[32] Conversely, the District Court for the Central District of California found recently that an assumption of a 100% violation rate was speculative where the complaint alleged that, "class member[s] regularly and/or consistently worked in excess of eight (8) hours in a day, in excess of (12) hours in a day, and/or in excess of forty (40) hours in a week."[33]

---

[28] Mot. to Remand, 4[ #4]; Opp.'n to Mot. to Remand, 5-6 [#9].

[29] Mot. to Remand, 4; Opp.'n to Mot. to Remand, 11.

[30] Muniz v. Pilot Travel Centers, LLC, 2007 WL 1202504 at *4 (E.D. Cal. Apr. 30, 2008).

[31] Id. at 5.

[32] Gardner v. GC Services, LP, 2010 WL 2721271 at *3 (S.D. Cal. July 6, 2010).

[33] Roth v. Commercia Bank, 799 F. Supp. 2d 1107, 1111 (C.D. Cal. 2010).

Here, it is unreasonable for the court to assume a 100% violation rate.[34] The Complaint does not assert a 100% violation rate, but, rather, states that it is the "typical practice" for sales associates to arrive "several minutes early" and "leave several minutes late[,]"[35] and that "sales associates frequently do not take a lunch break . . . or do not take an entire hour for lunch."[36] Plaintiff submitted data from discovery in predecessor litigation (Swanson I), which demonstrates that a 100% violation rate is clearly inaccurate.[37] Although Defendant has access to its payroll and timekeeping records, it has not submitted any evidence that would provide the court with a more accurate basis for calculating the actual violation rate in this case.[38] Because there is no support for a 100% violation rate, and because it is "not rooted in the allegations of the complaint," it cannot be relied upon to determine the amount in controversy.[39] Based on the sampled data provided by

---

[34] In general, cases that have allowed removal based on an assumed 100% violation rate have involved situations where the complaint was so vague or devoid of facts that no approximate violation rate could be determined. See Muniz v. Pilot Travel Centers, LLC, No. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal., May 1, 2007)(holding remand was inappropriate because "Plaintiff alleges no facts specific to the circumstances [alleged in the complaint]."); see also Gardner v. GS Services, LP, No. 10-CV-997-IEG (CAB), 2010 WL 2721271, at *3 (S.D. Cal., July 6, 2010).

[35] Compl. ¶ 12.

[36] Compl., ¶¶ 9, 12.

[37] Churchill Decl. [# 5], Ex. C; See also Ossoff Decl [#6].

[38] See Amoche, 556 F.3d at 51; see also Mack v. Wells Fargo Bank, NA, No. 11-40020, 2011 WL 1344194, at *4 (D. Mass April 8, 2011) (finding the lack of evidence to establish the amount in controversy was "especially significant" because Wells Fargo had access to information and chose not to provide it).

[39] Romulus v. CVS Pharmacy, Inc., CA No. 11-11734-RWZ, 2012 WL 899577, at *1 (D. Mass. March 16, 2012) (no basis for finding a 100% violation rate where the complaint "clearly states that the circumstances leading to such loss occurred 'sometimes.'").

Plaintiff, sales associates were not compensated for an average of fifteen minutes per week in time-rounding, and an average of .6 missed, uncompensated meal breaks per week.[40] This violation rate falls well below Defendant's proposed 100% violation rate.

The complaint states that Plaintiff's wage, and the average wage of the proposed class was $11.65 per hour. Combining this wage rate with the violation rate reflected in the affidavits, the single damages for the rounding claim are approximately $263,290, and the single damages for the meal break claim total approximately $631,896.[41] After trebling, the total amount in controversy under this calculation is approximately $2,700,000, well below the $5 million CAFA threshold.[42] Because Defendant has failed to show that there is "a 'reasonable probability' that the aggregate claims of the plaintiff class were greater than $5 million at the time of removal,"[43] remand is appropriate in this case.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand [#4] is ALLOWED.

   /s/ Joseph L. Tauro
United States District Judge

---

[40] Ossoff Decl. ¶ 7.

[41] Ossoff Decl. ¶¶ 8-9.

[42] Ossoff Decl. ¶ 10.

[43] Manson, 602 F. Supp. 2d at 293.